IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) Estate of Corben Hunter Jones by and through Geoheidi LeBlue, as Personal Administrator and as an individual, and<br>(2) George Myron Cardinal,<br>    Plaintiffs,<br><br>vs.<br><br>(1) Six Unknown U.S. Marshals Service Agents;<br>(2) Darryl LaCounte, Director, Bureau of Indian Affairs, as to Unknown Cross-Deputized Lighthorse officer(s);<br>(3) Eddy Rice, Sheriff Okmulgee County, in his official capacity;<br>(4) Vic Regalado, Sheriff Tulsa County, in his official capacity;<br>(5) Joe Prentice, Chief of Police, City of Okmulgee, in his official capacity;<br>(6) Wendell Franklin, Chief of Police, City of Tulsa, in his official capacity;<br>(7) Steve Norman, Chief of Police, City of Henryetta, in his official capacity;<br>(8) Colonel Brent Sugg, Chief of Patrol, Oklahoma Highway Patrol, in his official capacity;<br>(9) John Does 1-6, State Law enforcement officers not acting as U.S. Marshals, in their individual capacity;<br>    Defendants. | Case No.:   21-cv-00294-JFH-JFJ |

**Attorney Lien Claimed Complaint**

**COMES NOW** the Plaintiffs, Geoheidi LeBlue as Personal Representative of the Estate of Corben Hunter Jones, and individually, and George Myron Cardinal, individually, by and through their attorney of record, Howard M. Berkson, Esq., of Boston Avenue Law, PLLC and for this, their petition, allege and state the following to-wit:

Page 1 of 17

## I. **Introduction**

1. The Plaintiffs file this *Bivens*[1] action against unknown agents of the U.S. Marshals Service (hereinafter "USMS" or "Marshals Service") seeking relief for the violations of their constitutionally protected rights, including, but not limited to, false imprisonment, and the use of excessive force resulting in death.

2. The Plaintiffs file this *Bivens* action against unknown agents of the Bureau of Indian Affairs (hereinafter "BIA" or "Bureau") seeking relief for the violations of their constitutionally protected rights, including, but not limited to, false imprisonment, and the use of excessive force resulting in death.

3. The Plaintiffs similarly seek remedies, including monetary damages and punitive damages, from the John Doe defendants as unknown state law enforcement officers of the Defendants, Okmulgee Sheriff's Department (hereinafter "OSD" or "Okmulgee Sheriff"), Tulsa Sheriff's Department (hereinafter "TSD" or "Tulsa Sheriff"), Okmulgee Police Department (hereinafter "OPD" or "Okmulgee Police"), Tulsa Police Department (hereinafter "TPD" or "Tulsa Police"), Henryetta Police Department (hereinafter "HPD" or "Henryetta Police"), Oklahoma Highway Patrol (hereinafter "OHP" or "Highway Patrol"), who were not deputized, or acting, as U.S. Marshals, and were acting in their role as State law enforcement officers.

4. The Plaintiffs additionally seek remedies, including monetary damages from the Employers of the John Doe defendants, by naming the final policy makers thereof in their official capacity, of the Defendants, Okmulgee Sheriff, Tulsa Sheriff, Okmulgee Police, Tulsa Police, Henryetta Police, and Highway Patrol any of whom were not deputized, or acting, as U.S. Marshals, and were acting in their role as State law enforcement officers.

---

[1] *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

5. All of the above defendants, either acting under authority of federal, and/or state law, deprived the plaintiffs herein of their valuable, and fundamental, constitutional rights secured via the Fourth Amendment to the United States Constitution, federal and state common and statutory law, inclusive of, but not limited to 42 U.S.C §§ 1983, 1988.

## II.     Jurisdiction and Venue

6. This is a civil action seeking damages against Defendants Six Unknown U.S. Marshals Service Agents, BIA, OSD, TSD, OPD, TPD, HPD, and OHP for committing acts under color of law depriving Mr. Jones and Mr. Cardinal of their rights secured by the Constitution and Laws of the United States of America.

7. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(3), to secure protection of, and to redress, deprivations of rights secured by the Fourth and/or Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. §§ 1983, 1988 which provides for the protection of all persons in their civil rights, and the deprivation of rights under color of law.

8. The jurisdiction of the Court is also invoked under 28 U.S.C § 1331, to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourth, and/or Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983, 1988.

9. Notice was properly given under the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 O.S. § 151 *et. seq.* The events complained of herein occurred on or about November 6, 2019. Notice, as required 51 O.S. § 156 within one (1) year of the date of loss, was properly mailed to the agents for OSD, TSD, OPD, TPD, HPD, OHP, and the John Doe defendants on October 28, 2020.

10. The city of Tulsa, Tulsa County, and Okmulgee County failed to further acknowledge, or deny, said notice. Therefore, by operation of law under 51 O.S. § 157 ninety (90) days later, on or about February 9, 2021, deemed denial occurred. The GTCA provides that any state law cause of action therein must be brought by one-hundred and eighty (180) days following denial, or deemed denial, of the claim.

11. The Oklahoma Highway Patrol, *ex rel* the State of Oklahoma, outright denied said notice on February 16, 2021. The GTCA provides that any state law cause of action therein must be brought by one-hundred and eighty (180) days following denial of the claim.

12. The Cities of Okmulgee and Henryetta outright denied said notice on January 22, 2021. The GTCA provides that any state law cause of action therein must be brought by one-hundred and eighty (180) days following denial of the claim.

13. Notice was properly given under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2681 to 2680. The events complained of herein occurred on or about November 6, 2019. Notice, within one (1) year of the date of loss, was properly mailed to the agents for the USMS and BIA defendants on October 28, 2020. The same was acknowledged by BIA and USMS, with USMS being designated as the responding agency, and assigned the identifier OGC # 52602.

14. No further communication from the responding agency, USMS, as of this date. Therefore, pursuant to the deemed denied doctrine by the USMS not issuing a decision within six (6) months of the notice. Thereafter a lawsuit may be filed at any time, even if a later administrative denial is to follow. As of the date of filing this complaint the claims made herein is properly deemed denied allowing this action to proceed.

15. Therefore, this action being timely filed, and this Court having original jurisdiction

over the claims and controversies herein, also has supplemental jurisdiction over the related state law tort and constitutional claims under 28 U.S.C. § 1367.

16. Venue is proper in this District under 28 U.S.C. § 1391(b), because a substantial part of the events, or omissions, constituting the unlawful acts complained of herein, and giving rise to Ms. LeBlue and Mr. Cardinal's claims occurred in the City of Henryetta, Okmulgee County, State of Oklahoma, which is within the Eastern District of Oklahoma.

### III.   Parties

17. Corben Hunter Jones (deceased) was a 20-year-old male, whose life was lost by manner of homicide on November 6, 2019. Mr. Jones resided with his maternal grandfather, George Myron Cardinal, at 11505 Chestnut Rd., Henryetta, OK 74437. Mr. Jones instantly died from multiple gunshot wounds from an excessive, and unnecessary, volley of gunfire inside his home. Administrator of the Estate Geoheidi LeBlue acts on his behalf and in his stead.

18. Geoheidi LeBlue is the natural mother of Mr. Jones who resides at 808 N. Ash Ave., Sand Springs, OK 74063.

19. George Myron Cardinal is Mr. Jones' maternal grandfather who owns, and lives at, 11505 Chestnut Rd., Henryetta, OK 74437 and was there when Mr. Jones' homicide occurred.

20. The individual defendants of the U.S. Marshals Service are presently unknown agents of the USMS. As the Agents were part of the "Eastern District Violent Crimes Fugitive Task Force" they may be permanent employees of the United States Department of Justice – U.S. Marshals Service, or state, or local, or tribal officers deputized to act as U.S. Marshals as a part of the Task Force.

21. The USMS is a federal law enforcement agency within the U.S. Department of

Justice (hereinafter "DOJ"). *See* 28 U.S.C. § 561.

22. At all relevant times herein the unknown agents of the USMS acted under color of federal law.

23. The individual defendants of the BIA are presently unknown agents of the BIA. On information and belief, the Agents were part of the "Eastern District Violent Crimes Fugitive Task Force" they may be permanent employees of the United States Bureau of Indian Affairs, or, Tribal Police of the Muscogee (Creek) Lighthorse police, deputized to act as BIA police and/or as U.S. Marshals.

24. At all relevant times herein, the unknown agents of the BIA acted under color of federal law.

25. The defendants OSD, TSD, OPD, TPD, HPD, and OHP, named by their final policy maker herein in their respective individual capacities, are the employers of the non-federal personnel and the unknown John Doe defendants who, upon information and belief, deprived the plaintiffs of protected civil rights. Each of the OSD, TSD, OPD, TPD, HPD, and OHP are agencies of the State of Oklahoma body politic, and are governmental bodies, or agencies, formed and incorporated pursuant to the laws of the State of Oklahoma.

26. At all relevant times the final policy makers of the OSD, TSD, OPD, TPD, HPD, and OHP, and the named John Doe defendants acted under color of state law.

27. At all times, Defendant Eddy Rice, was the Sheriff of Okmulgee County; on information and belief, he is a resident of Okmulgee County, State of Oklahoma, and acts as a final policy maker for the Okmulgee County, Oklahoma, Sherriff's Office, for decisions and conduct regarding polices, customs, and conduct of the Sheriff's Office's Deputies. Rice is being sued in

his official capacity as final policy maker. Rice is, and was, at all times pertinent hereto, responsible for adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs that violated the Plaintiffs' rights as set forth in this Complaint.

28. At all times, Defendant Vic Regalado, was the Sherriff of Tulsa County; on information and belief, he is a resident of Tulsa County, State of Oklahoma, and acts as a final policy maker for the Tulsa County, Oklahoma, Sheriff's Office, for decisions and conduct regarding polices, customs, and conduct of the Sheriff's Office's Deputies. Regalado is being sued in his official capacity as final policy maker. Regalado is, and was, at all times pertinent hereto, responsible for adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs that violated the Plaintiffs' rights as set forth in this Complaint.

29. At all times, Defendant Joe Prentice, was the Chief of Police for the City of Okmulgee; on information and belief, he is a resident of Okmulgee County, State of Oklahoma, and acts as a final policy maker for the Okmulgee Police Department, for decisions and conduct regarding polices, customs, and conduct of the Okmulgee Police Department's officers. Prentice is being sued in his official capacity as final policy maker. Prentice is, and was, at all times pertinent hereto, responsible for adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs that violated the Plaintiffs' rights as set forth in this Complaint.

30. At all times, Defendant Wendell Franklin, was the Chief of Police for the City of Tulsa; on information and belief, he is a resident of Tulsa County, State of Oklahoma, and acts as a final policy maker for the Tulsa Police Department, for decisions and conduct regarding polices,

customs, and conduct of the Tulsa Police Department's officers. Franklin is being sued in his official capacity as final policy maker. Franklin is, and was, at all times pertinent hereto, responsible for adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs that violated the Plaintiffs' rights as set forth in this Complaint.

31.     At all times, Defendant Steve Norman, was the Chief of Police for the City of Henryetta' on information and belief, he is a resident of Okmulgee County, State of Oklahoma, and acts as a final policy maker for the Henryetta Police Department, for decisions and conduct regarding polices, customs, and conduct of the Henryetta Police Department's officers. Norman is being sued in his official capacity as final policy maker. Norman is, and was, at all times pertinent hereto, responsible for adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs that violated the Plaintiffs' rights as set forth in this Complaint.

32.     At all times, Defendant Colonel Brent Sugg, was the Chief of Patrol for the Oklahoma Highway Patrol; on information and belief, he is a resident of Oklahoma County, State of Oklahoma, and acts as a final policy maker for the Oklahoma Highway Patrol, for decisions and conduct regarding polices, customs, and conduct of the Oklahoma Highway Patrol's officers. Sugg is being sued in his official capacity as final policy maker. Sugg is, and was, at all times pertinent hereto, responsible for adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs that violated the Plaintiffs' rights as set forth in this Complaint.

33.     All defendants created, condoned, participated in, and/or covered up, by their actions or inactions, the unlawful acts about which the plaintiff's complain.

IV. **Factual Allegations**

34. On 17 July, 2019, Okmulgee County Case no. CF-2019-157 was filed along with an affidavit of probable cause (the "Okmulgee Case"). A warrant of arrest was issued for Defendant Corben Hunter Jones. CF-19-157 alleging Jones attempted to steal a go-cart. Jones bargained for the go-cart in a trade with a minor. Upon delivering his consideration to the minor's residence, he chained the go-cart to his tractor in order to retrieve it. Adults came out of the residence and refused to honor the trade. Defendant jones unchained the go-cart and left. On 10 October, 2019, the case was passed to 3 December. On 3 December, 2019, the case was dismissed due to the homicide of Corben Jones on 6 November 2019.

35. Also on 17 July, 2019, Tulsa County Case no. CF-2019-3344 was filed, charging Jones with one count of lewd molestation (the "Tulsa Case"). According to the probable cause affidavit, Jones allegedly touched his sister on the breast on the outside of her clothing.

36. Corben was mortally wounded, ruled a death by homicide, by multiple gunshot wounds which were caused by defendants.

37. The homicide occurred inside Cardinal's home.

38. Corben's tragic and untimely death occurred at approximately 8:45 pm on 6 November, 2019.

39. Corben was with his maternal grandfather, George Myron Cardinal, at Cardinal's home, where Jones also lived. The home is located at 11505 Chestnut Road, Henryetta, OK 74437.

40. At around 8:00 p.m. on the night of Corben's death, it was dark outside. The door to the home was open approximately two feet. Cardinal was watching television and Jones was in his bedroom talking on the phone with his fiancé.

41. Eventually, Cardinal noted several vehicles outside his residence, some of which were operating emergency vehicle lights.

42. Consequently, Cardinal went to the front door and more fully opened it. There, immediately outside his door, Cardinal was confronted by five or six law enforcement officers in military-style outfits and equipment.

43. Those law enforcement officers pulled Cardinal out of the house and threw him off the porch, injuring his hip. Other officers handcuffed Cardinal and detained him in the front yard. During his detention, Mr. Cardinal was bullied and not allowed to contact a lawyer or allowed to voluntarily give a statement about the incident in his home.

44. Shortly after throwing Mr. Cardinal from his own porch, the officers at the front door began entering his home.

45. Almost immediately, shots erupted. The first burst of gunfire involved several shots. The second burst of gunfire was around half as long. Several individual shots were fired in the moments thereafter.

46. Cardinal did not hear any warnings or identification statements by the officers in the house prior to their gunfire.

47. Cardinal noted law enforcement individuals present were labeled U.S. Marshals.

48. Cardinal noticed some of the law enforcement personnel had other agency patches on their uniforms, separately from and in addition to their U.S. Marshals labels. On information and belief, also present were law enforcement officers from a variety of Oklahoma agencies including the Henryetta Police Department, the Okmulgee County Sheriff's department, the Okmulgee Police Department, The Tulsa County Sheriff's Department, and the Tulsa Police Department, along with troopers from the Oklahoma Highway Patrol and officers with the Creek

Nation Lighthorse.

49. On information and belief, the Creek Nation Lighthorse officers are believed to be cross-deputized with the Bureau of the Interior and/or the U.S. Marshals Service.

50. The officers' gunfire resulted in seven entrance wounds and four exit wounds on Jones' body, which caused the death of Corben Jones.

51. There was a hearing in the Okmulgee case less than four weeks after the warrant team killed Corben. Corben had never been late or absent from Court in that case: there was no reason to serve him at his home.

52. The officers responsible for the death of Corben Jones were unreasonable and excessive in their use of force because a reasonable officer in the same circumstances would not have killed Corben Jones.

53. On information and belief, Jones' death was facilitated in part by policies, procedures, and/or customs that rise to the level of policies or procedures, promulgated or permitted by the relevant policymaking individuals of the various agencies involved in this tragedy.

54. On information and belief, the policy and practice of the USMS of deputizing local law enforcement officers as U.S. Marshals for the purposes of warrant sweeps allows local officers to act with greater protection from being held accountable, allowing more violence, more homicide deaths of fugitives, and to provide less accountability for said officers.

55. On information and belief, this policy and practice of federally deputizing local officers as U.S. Marshals to hunt fugitives on local rather than on federal warrants results in the local, cross-deputized officers being far more likely to use their weapons to execute the people they are to serve or arrest.

56. On information and belief, the use of deadly force by these cross-deputized local officers is a direct result of the much looser rules of the USMS on the use of deadly force, lack of a policy of de-escalation or exhaustion of other remedies before use of deadly force, rules allowing the firing into cars and other areas where there may be innocent bystanders, and the non-use of body cameras as compared to the rules the officers are bound to by their local agencies.

57. Mr. Cardinal was not charged with any crime.

58. Despite his pleas for information about what had occurred in the home, the unknown agents refused to provide Cardinal any information.

59. Corben's premature death dramatically and emotionally affected LeBlue and Cardinal.

60. At no time prior to the filing of this action have any of the defendants herein provided information on any substantive investigation conducted to determine if the agents' use of force herein was proper.

61. In the absence of forensic, or other corroborating evidence to support the Defendants' version of events, it is evident that Cardinal was falsely imprisoned, and otherwise deprived of his Fourth Amendment rights without probable cause. Further, it is evident the agents used excessive and unreasonable force against Cardinal and Corben.

62. The facts and circumstances related to the events in the Cardinal home on 6 November, 2019 clearly establish that OSD, TSD, OPD, TPD, HPD, and OHP have failed to properly train their employees and that such failure has resulted in the deprivation of the plaintiff's rights, and the rights of citizens those public entities are mandated to protect and serve.

63. As the direct and proximate cause of the defendants' herein unlawful actions and/or

inaction, the Plaintiffs' have suffered injury, including death, depression, pain and suffering, emotional distress, embarrassment, and loss of familial companionship.

### Count I – 4th Amendment Violations by unknown USMS Agents and BIA Agent(s)

64. The allegations contained in all preceding paragraphs are hereby incorporated by reference as though fully set forth herein.

65. In relevant part the Fourth Amendment provides: "The right of the people to be secure in their persons, houses, paper, and effects, against unreasonable searches and seizures, shall not be violated."

66. The defendants are liable to plaintiffs for violating their 4th Amendment rights as evidenced by the facts alleged herein.

67. The agents are also liable for their conspiracy to cover-up and hide their mis-deeds as alleged herein.

68. The agents affirmatively have acted to conceal facts about the events complained of herein to protect themselves from a potential civil lawsuit.

69. Evidence of the agents' conspiratorial actions is evident from the facts herein, which show:

   a. The existence of an express of implied agreement among the defendants to deprive plaintiffs of their constitutional rights;

   b. The actual depravation of those constitutional rights occurred.

### Count II – 4th Amendment Violations by John Doe State Actors

70. The allegations contained in all preceding paragraphs are hereby incorporated by

reference as though fully set forth herein.

71. The John Doe law enforcement officers of OSD, TSD, OPD, TPD, HPD, and OHP are liable to plaintiffs under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution for their unlawful acts as alleged herein.

### Count III – Municipal Liability OSD, TSD, OPD, TPD, HPD, and OHP

72. The allegations contained in all preceding paragraphs are hereby incorporated by reference as though fully set forth herein.

73. The John Doe defendants, at all times relevant hereto, were acting in their capacities as deputies and police officers, in and for, the named local and state agencies, under color of statutes, ordinances, customs, and usage, of their respective departments.

74. The following policies and procedures, among others that will be developed in discovery, informal customs, or practices, are so persistent and widespread, that they are standard operating procedure for the named agencies:

    a. Use of excessive, and unreasonable, force, including deadly force in apprehension of fugitives;

    b. Use of improper, and unconstitutional, detention procedures, detaining persons under false pretense, to hide constitutional violations from parties present at the time of a warrant sweep;

    c. Deputies and Officers using false, misleading, or deceptive information when excessive force has been used to justify and cover their actions;

    d. Tolerating Officers and Deputies who use unreasonable and excessive force against a subject or suspect;

    e. Officers and deputies failing to properly secure a scene where a homicide death has

occurred as the result of the Officer or Deputy's use of excessive force;

75. On information and belief, there is an affirmative link between the aforementioned acts and omissions of Defendants and the informal customs, or practices, of their respective agencies. Theses Customs or practices are the direct cause in fact of the plaintiffs herein constitutional injuries.

76. Further, the named agencies are responsible for the adequate training and supervision of their Officers and Deputies, who have participated, conspired, and acted in concert in causing the above complained of constitutional deprivations suffered by Plaintiff and others. The training for preservation of Constitutional protections, on excessive force, are designed to protect the Constitutional rights of citizens while in performance of the Officers or Deputies' duties. Supervision allows for oversight and correction of constitutionally infirm behavior and practices. The named state and local agencies have failed to adequately train, and/or supervise its Officers and Deputies relating to the use of force and on Fourth Amendment protections afforded to citizens under the Constitution of the United States of America. There is a clear, and obvious, need to adequately train and supervise both uniformed, and supervising, Officers and Deputies to assuage such obvious consequences of Fourth Amendment violations.

77. The named state and local agencies and their named final policymakers, knew, or should have known, the obvious result of the maintenance of the aforementioned actions, inactions, and/or omissions would be substantially certain Constitutional violations like those suffered by the plaintiffs. The named state and local agencies consciously chose to disregard this glaring risk.

78. As the direct and proximate cause of the named state and local agencies herein unlawful actions and/or inaction, the Plaintiffs' have suffered injury, including death, depression, pain and suffering, emotional distress, embarrassment, and loss of familial companionship.

### Count IV – Wrongful Death 12 O.S. § 1053 et. Seq. John Doe Actors

79. The allegations contained in all preceding paragraphs are hereby incorporated by reference as though fully set forth herein.

80. On information and belief, the actions of the John Doe defendants as alleged above were intentional, reckless, and/or negligent.

81. The John Doe defendants had a duty to Corben to use reasonable efforts in the conduct of their official duties to avoid any unnecessary and/or unreasonable harm to him.

82. The John Doe defendants breached their duty to the decedent to use reasonable efforts in the conduct of their official duties to avoid any unnecessary and/or unreasonable harm to the decedent, which directly and proximately was the cause of Corben's death.

83. The John Doe defendants are liable to Corben's estate, and survivors, for all damages available to them under the Oklahoma wrongful death statute.

84. These damages include, but are not limited to:

   a. medical and burial expenses;

   b. mental pain and anguish suffered by Corben;

   c. pecuniary losses to his survivors;

   d. grief and loss of companionship;

   e. punitive and exemplary damages

### Prayer for Relief

**WHEREFORE**, premises considered the plaintiffs respectfully request that this Court:

   a) Enter a declaratory judgment that the defendant's actions, as complained of herein,

    in causing the homicide death of Corben, and detaining Cardinal, violated the plaintiffs' rights, as secured by the U.S. Constitution and federal and state statutes;

b) Award compensatory damages to the plaintiffs in an amount exceeding $1,500,000.00 for violation of the plaintiffs' constitutional and state law rights as alleged herein;

c) Award punitive damages, as allowed by state and/or federal law to plaintiffs;

d) Award any, and all, equitable or monetary relief that the Court deems appropriate, including, but not limited to, pre and post-judgment interest;

e) Award to plaintiffs reasonable attorney's fees and reimbursement of the costs of litigation; and,

f) Award any, and all, other relief this Court deems proper and just.

Respectfully Submitted
Boston Avenue Law, PLLC


    /s/ Howard Berkson
Howard M. Berkson, Esq.
OBA # 31482
401 S. Boston
Suite 500
Tulsa, OK 74103
Tel: 539-777-1287
Facsimile: 405-509-7100
Howard@BostonAvenueLaw.com
**Attorney for Plaintiffs**


**ATTORNEY'S LIEN CLAIMED**


**JURY TRIAL DEMANDED**