**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| Estate of Corben Hunter Jones by and through Geoheidi LeBlue, as Personal Administrator, *et. al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 21-CV-218-RAW |
| vs. | ) ) | |
| Richard Berry, et al | ) ) | |
| Defendants. | ) | |

---

**DEFENDANTS RICHARD BERRY'S, BRIAN GILLIAM'S, JERE SMITH'S, KEATON ALEXANDER'S, NATHAN NEILL'S, AND BRAD BAKER'S MOTION TO DISMISS**

---

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

/s/Susan Stidham Brandon
SUSAN STIDHAM BRANDON, OBA #12501
JASON POE, Louisiana Bar #31918
Assistant United States Attorneys
520 Denison Avenue
Muskogee OK 74401
Phone: 918-684-5112
Fax: 918-684-5130
Email: susan.brandon@usdoj.gov
Email: jason.poe@usdoj.gov

## <u>TABLE OF CONTENTS</u>

I. PROCEDURAL HISTORY AND PLAINTIFF'S ALLEGATIONS…………………………..1

II. ARGUMENTS AND AUTHORITIES…………………………………………………....3

    A.  Plaintiffs Have No Judicially Implied Bivens Remedy Against the USMS
    Defendants……………………………………………………………………………….3

        1. Plaintiff's Allegations Present a "New Bivens Context"………………………5

        2. Special Factors Counsel Against Finding an Implied Bivens Cause of
        Action Here……………………………………………………………………8

            a. Congress is Better Positioned to Fashion a Remedy in this  Context
            Precluding Plaintiffs' Alleged Bivens Claims…………………………8

            b. Alternative Remedial Structures Already Exist, Precluding
            Plaintiffs' Alleged Bivens Claims……………………………………10

    B.  Plaintiffs' Alleged Bivens Actions Against the USMS Defendants are Time
    Barred…………………………………………………………………………..13

        1. Plaintiffs' Bivens Claims Against the USMS Defendants were Asserted
        More than Two Years After the Alleged Fourth Amendment Violations…….13

        2.  The Second Amended Complaint Does Not Relate Back to the Date of
        the Original Complaint to Save Plaintiffs' Ultimately Alleged Bivens
        Claims Against the USMS Defendants………………………………………14

    C.  The USMS Defendants are entitled to Qualified Immunity…………………………16

    D.  The USMS Defendants Are Immune from Liability Under State Tort Law……….. 19

III.  CONCLUSION………………………………………………………………………..20

# TABLE OF AUTHORITIES

Other Authorities

*Style v. Mackey,*
   2020 WL 3055319 (S.D.N.Y. Jun. 8, 2020) ............................................................. 6
*Pettibone v. Biden,*
   2023 WL 2969267 (D. Or. Apr. 17, 2023) ............................................................. 12
*Logsdon v. USMS,*
   2023 WL 205052 (E.D. Okla. Jan. 13, 2023) ................................................. 7, 11, 12
*Silva v. United States,*
   45 F.4th 1134 (10th Cir. 2022) ......................................................................... 5, 8, 10
*Krupski v. Costa Crociere,*
   560 U.S. 538 (2010) ............................................................................................... 14
*Anderson v. Creighton,*
   483 U.S. 635 (1987) ............................................................................................... 16
*Ashcroft v. Iqbal,*
   556 U.S. 662 ...................................................................................................... 3, 18
*Barrow v. Wethersfield Police Dep't,*
   66 F.3d 466 (2d Cir. 1995) ..................................................................................... 15
*Baskin v. City of Des Plaines,*
   138 F.3d 701 (7th Cir. 1998) .................................................................................. 15
*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................................. 3
*Bell v. City of Topeka,*
   279 Fed. Appx. 689 (10th Cir. 2008) ...................................................................... 15
*Bivens v Blaike,*
   No. 21-cv-00783, 2022 WL 2158984 (D. Colo. June 15, 2022) .............................. 11
*Bivens v. Six Unknown Federal Narcotics Agents,*
   403 U.S. 388 (1971) .............................................................................................. 4, 7
*Bivins v. Rodriguez,*
   No. 18-CV-2671, 2020 WL 134115 (E.D. Cal. Jan. 13, 2020) .................................. 6
*Brosseau v. Haugen,*
   543 U.S. 194 (2004) ............................................................................................... 16
*Cantu v. Moody,*
   933 F.3d 414 (5th Cir. 2019) .................................................................................... 7
*Carlson v. Green,*
   446 U.S. 14 (1980) ................................................................................................... 5
*Choice v. Michalak,*
   2022 WL 4079577 (N.D. Ill. Sept. 6, 2022) ........................................................... 11
*Cienciva vs. Brozowski,*
   No. 3:20-cv-2045, 2022 WL 2791752 (M.D. Pa. July 15, 2022) ......................... 6, 12
*Correctional Servs. Corp. v. Malesko,*
   534 U.S. 61 (2001) ............................................................................................. 5, 18

*Cox v. Treadway*,
   75 F.3d 230 (6th Cir. 1996) ........................................................................ 15
*Davis v. Dotson*,
   2021 WL 5353099 (11th Cir. Nov. 17, 2021) ............................................ 13
*Edwards v. Gizzi*,
   No. 20-CV-7371 (KMK), 2022 WL 309393 (S.D.N.Y. Feb. 2, 2022) ........ 6
*Egbert v. Boule*,
   142 S. Ct. 1793 (2022) ........................................ 4, 5, 6, 8, 9, 10, 12
*F.D.I.C. v. Meyer*,
   510 U.S. 471 (1994) .................................................................................... 18
*Fancher v. Barrientos*,
   723 F.3d 1191 (10th Cir. 2013) ................................................................. 18
*Galvin v. Occupational Safety & Health Admin.*,
   860 F.2d 181 (5th Cir.1988) ...................................................................... 20
*Garrett v. Fleming*,
   362 F.3d 692 (10th Cir. 2004) ................................................................... 15
*Graham v. Connor*,
   490 U.S. 386 (1989) ............................................................................. 17, 18
*Graves v. Gen. Ins. Corp.*,
   412 F.2d 583 (10th Cir. 1969) ................................................................... 14
*Hall v. Bellmon*,
   935 F.2d 1106 (10th Cir. 1991) ................................................................... 3
*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) .................................................................................... 16
*Hernandez v. Causey*,
   No. 2:17-123, 2022 WL 4594023 (S.D. Miss. Sept. 29, 2022) .................. 7
*Hernandez v. Mesa*,
   140 S. Ct. 735 ......................................................................................... 4, 5
*Jackson v. City of Bremerton*,
   268 F.3d 646 (9th Cir. 2001) ..................................................................... 17
*Jackson v. Kotter*,
   541 F.3d 688 (7th Cir. 2008) ..................................................................... 20
*Jacobsen v. Osborne*,
   133 F.3d 315 (5th Cir. 1998) ..................................................................... 15
*Kan. Penn Gaming, LLC v. Collins*,
   656 F.3d 1210 (10th Cir. 2011) ................................................................. 19
*Lewis v. Westfield*,
   No. 16-CIV-1057, 2022 WL 16924177 (E.D. N.Y. Nov. 14, 2022) ...... 6, 7, 12
*Lundstrom v. Romero*,
   616 F.3d (10th Cir. 2010) .......................................................................... 17
*McCarty v. Gilchrist*,
   646 F.3d 1281 (10th Cir. 2011) ................................................................. 14
*Mejia v. Miller*,
   61 F.4th 663  (9th Cir. 2022) ...................................................................... 7
*Miller v. Glanz*,
   948 F.2d 1562 (10th Cir. 1991) ................................................................... 3

*Mongeau v. Jacksonville Sheriff's Office*,
    197 F. App'x 847 (11th Cir. 2006) ....................................................................... 17
*Nolin v. Isbell*,
    207 F.3d 1253 (11th Cir. 2000) ......................................................................... 17
*Oliva v. Nivar*,
    973 F.3d 438 (5th Cir. 2020) ............................................................................ 13
*Pace v. Swerdlow*,
    519 F.3d 1067 (10th Cir. 2008) ........................................................................... 3
*Pahls v. Thomas*,
    718 F.3d 1210 (10th Cir. 2013) ......................................................................... 19
*Pearson v. Callahan*,
    555 U.S. 223 (2009).......................................................................................... 16
*Pettibone v. Biden*,
    No. 3:20-CV-1464-YY, 2022 WL 19521759 (D. Or. Sept. 22, 2022) ................... 12
*Pettibone v. Russell*,
    59 F.4th 449 (9th Cir. 2023) ............................................................................. 11
*Rivas-Villegas v. Cortesluna*,
    142 S. Ct. 4 (2021)............................................................................................ 17
*Rivera v. Samilo*,
    370 F. Supp.3d 362 (E.D.N.Y. 2019) .................................................................. 13
*Schwarz v. Meinberg*,
    761 Fed. Appx. 732 (9th Cir. Feb. 13, 2019).......................................................... 13
*Schweiker v. Chilicky*,
    487 U.S. 412 (1988)............................................................................................. 8
*Sheridan v. Reidell*,
    465 F.Supp.2d 528 (D.S.C. 2006).......................................................................... 20
*Siegert v. Gilley*,
    500 U.S. 226 (1991)............................................................................................ 18
*Smart v. City of Wichita*,
    951 F.3d 1161 (10th Cir. 2020) .......................................................................... 18
*Smith v. United States*,
    561 F.3d 1090 (10th Cir. 2009) .......................................................................... 19
*Sutton v. Utah State Sch. for Deaf & Blind*,
    173 F.3d 1226 (10th Cir. 1999) ............................................................................. 3
*Thomas v. Durastanti*,
    607 F.3d 655 (10th Cir. 2010) ............................................................................. 17
*W. Contracting Corp. v. Bechtel Corp.*,
    885 F.2d 1196 (4th Cir. 1989) ............................................................................ 15
*Wayne v. Jarvis*,
    197 F.3d 1098 (11th Cir. 1999) .......................................................................... 15
*White v. Jackson*,
    865 F.3d 1064 (8th Cir. 2017) ............................................................................ 17
*Williams v. Keller*,
    2021 WL 4486392 (10th Cir. Oct 1, 2021)............................................................ 13
*Wilson v. Garcia*,
    471 U.S. 261 (1985)............................................................................................ 14

*Young v. City Council Bluffs*,
    569 F. Supp. 3d 885 (S.D. Iowa 2021) ............................................................ 9
*Young v. Davis*,
    554 F.3d 1254 (10th Cir. 2009) ...................................................................... 14
*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) ................................................................. 4, 5, 7, 8, 18

Regulations

12 Okla. Stat. tit. 12 ......................................................................................... 14
28 U.S.C. § 1331 .............................................................................................. 13
28 U.S.C. § 2679(b)(1) ..................................................................................... 19
28 U.S.C. § 2680(h) ......................................................................................... 13
28 U.S.C. § 566(c) ......................................................................................... 6, 7
28 U.S.C. §§ 1346(b) ....................................................................................... 12
28 U.S.C. §§ 2671 ............................................................................................ 19
28 U.S.C. §§ 2674 ............................................................................................ 19
31 U.S.C. § 3724 .............................................................................................. 13
34 U.S.C. § 20989 ............................................................................................. 9
34 U.S.C. § 41503(a) ......................................................................................... 9
5 U.S.C. app. 3 § 3 .......................................................................................... 11
Public Law 107-56 ............................................................................................ 12

Fed. R. Civ. P. 15(c) ....................................................................................... 14
FRCP 15(c)(1)(C)(ii) ....................................................................................... 14
Rule 15(c)(3)(B) .............................................................................................. 15

28 C.F.R. § 0.111 ............................................................................................. 11
8 C.F.R. §§ 1103(a)(2) ..................................................................................... 10

146 Cong. Rec. S11651-01 ................................................................................ 9
P.L. 544 ............................................................................................................ 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| Estate of Corben Hunter Jones by and through Geoheidi LeBlue, as Personal Administrator, *et. al.*,<br><br>              Plaintiffs,<br><br>       vs.<br><br>Richard Berry, et al<br><br>             Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   **Case No.: 21-CV-218-RAW**<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS RICHARD BERRY'S, BRIAN GILLIAM'S, JERE SMITH'S, KEATON ALEXANDER'S, NATHAN NEILL'S, AND BRAD BAKER'S MOTION TO DISMISS

Defendants Richard Berry, Brian Gilliam, Jere Smith, Keaton Alexander, Nathan Neill, and Brad Baker ("USMS Defendants"), by and through Christopher J. Wilson, United States Attorney for the Eastern District of Oklahoma, and Susan Stidham Brandon and Jason Poe, Assistant United States Attorneys, move to dismiss all the claims against the USMS Defendants.

Plaintiffs' alleged claims against the USMS Defendants for *Bivens* liability should be precluded for several reasons. First, this case presents a "new *Bivens* context" for which Congress is best positioned to address. Furthermore, alternative remedial structures exist to address the USMS Defendants' alleged conduct, which counsels against the creation of a judicially implied *Bivens* remedy. Second, even if this Court were to recognize a *Bivens* remedy, such claims against the USMS Defendants are barred by the applicable statute of limitations and cannot be saved by the relation-back doctrine. Moreover, the USMS Defendants are entitled to qualified immunity. Finally, the USMS Defendants are immune from liability and suit from any claims arising under the Federal Tort Claims Act. Dismissal is proper.

### I.    PROCEDURAL HISTORY AND PLAINTIFF'S ALLEGATIONS

Plaintiffs filed this action on July 20, 2021, asserting *inter alia* Fourth Amendment claims against certain law enforcement personnel, including "Six Unknown U.S. Marshals Service Agents" arising from Corben Hunter Jones's death and the alleged unlawful detention of Plaintiff Cardinal during the execution of an arrest warrant on November 6, 2019. (Doc. 2). On December

14, 2021, Plaintiffs amended their Complaint to name a defendant in his personal capacity who was previously sued in his official capacity. (Doc. 48; Doc. 30 (stating the grounds to amend the Complaint)). Plaintiff's First Amended Complaint asserted *inter alia* Fourth Amendment claims against certain law enforcement personnel, including "Six Unknown U.S. Marshals Service Agents" arising from Corben Hunter Jones's death and the alleged unlawful detention of Plaintiff Cardinal during the execution of an arrest warrant on November 6, 2019. (Doc. 48). On October 10, 2022, Plaintiffs moved to substitute the USMS Defendants as defendants in lieu of the "Six Unknown U.S. Marshals." (Doc. 91). With the Court's approval, Plaintiffs filed their Second Amended Complaint ("SAC") on October 31, 2022, naming for the first time the USMS Defendants as parties to this action. (Doc. 95). Plaintiffs named the USMS Defendants in their individual capacities, (Doc. 95, ¶ 2), and alleged all the USMS Defendants "were labeled U.S. Marshals" at the time of the subject incident. (Doc. 95, ¶ 32).

In the SAC, Plaintiffs allege Corben Hunter Jones (Jones) died from gunshot wounds caused by *inter alia* the USMS Defendants on November 6, 2019, at Plaintiff Cardinal's home. (Doc. 95, ¶¶ 13 15, 23). Plaintiffs allege the USMS Defendants were, at all relevant times, acting as agents of the United States Marshal Service and acting under the color of federal law as part of the "Eastern District Violent Crimes Fugitive Task Force." (Doc. 95, ¶¶ 16, 18). At the time of the incident, Jones had an active warrant for his arrest for felony proceedings in Okmulgee County District Court. (Doc. 95, ¶ 20).

Plaintiffs allege on November 6, 2019 at approximately 8:00pm Plaintiff Cardinal noticed several vehicles with emergency lights on outside his house, so he went to his partially opened front door and fully opened it when he was confronted by the USMS Defendants. (Doc. 95, ¶¶ 26-28). Plaintiffs allege the USMS Defendants then pulled Plaintiff Cardinal from his house and threw him off the porch and handcuffed and detained him in the front yard. (Doc. 95, ¶ 29). Plaintiffs allege the USMS Defendants then entered the home, did not provide any warnings or identification, and then gunshots erupted in three volleys. (Doc. 95, ¶¶ 30-31).

Plaintiffs allege Defendants Berry, Gilliam, Baker, and Neill fired their weapons, (Doc. 95, ¶¶ 56, 64, 80, 72), while Defendants Smith and Alexander failed to intervene to prevent the alleged excessive force. (Doc. 95, ¶¶ 88, 96). Plaintiffs allege Defendants Smith and Alexander also used physical, unnecessary, and excessive force. (Doc. 95, ¶¶ 90, 92, 98, 100). Plaintiffs allege the officers' conduct resulted in Jones's death. (Doc. 95, ¶ 35).

Plaintiffs allege the USMS Defendants "intentionally violated Mr. Jones' federal rights and acted with reckless indifference to Mr. Jones' 4th Amendment federal rights." (Doc. 95, ¶¶ 62, 70, 78, 86, 94, 102). Plaintiffs further allege the USMS Defendants "falsely imprisoned and otherwise deprived Plaintiff Cardinal of this Fourth Amendment rights without probable cause" and that "the agents used excessive and unreasonable force against [Plaintiff] Cardinal." (Doc. 95, ¶ 46).

Plaintiffs assert causes of action against the USMS Defendants under *Bivens* for alleged Fourth Amendment violations, (Doc. 95, Count I), and for wrongful death under Oklahoma's wrongful death statute, (Doc. 95, Count II).

## II.   ARGUMENTS AND AUTHORITIES

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint and view those allegations in the light most favorable to the non-moving party. *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Court may also properly consider documents central to Plaintiff's claim and referred to in the complaint, where the document's authenticity is not in dispute. *Pace v. Swerdlow*, 519 F.3d 1067 (10th Cir. 2008).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (citation omitted). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991); *see also Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (a "court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations").

While a complaint need not contain "detailed factual allegations" to survive a motion to dismiss, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Where a legal conclusion is couched as a factual allegation, there is no presumption that the allegation is true. *Id.* at 555-56.

## A.   Plaintiffs Have No Judicially Implied *Bivens* Remedy Against the USMS Defendants

Plaintiffs cannot assert a *Bivens* claim against the USMS Defendants. More than forty

years ago, the Supreme Court provided limited authorization for a cause of action against agents of the Federal Bureau of Narcotics who, without a warrant, allegedly arrested the plaintiff in front of his wife and children in his residence for alleged narcotics violations, threatened to arrest the entire family, and searched the entire residence, all allegedly without probable cause in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 389 (1971).  However, *Bivens* is not *carte blanche* to assert Fourth Amendment claims against federal officers, but rather imposes liability against a certain class of federal officers under certain circumstances. The Supreme Court has explicitly cautioned, "recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (citations omitted).  Indeed, the viability of *Bivens* itself has been questioned by the Supreme Court.  *Id.* at 1809 ("[W]e have indicated that if we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution." (citing *Ziglar v. Abbasi*, 582 U.S. 120, 134 (2017))).   *Bivens* is inapplicable here.

In *Egbert v. Boule*, the United States Supreme Court reigned in potential expansion of *Bivens* liability, even in cases of "parallel circumstances."  *See* 142 S. Ct. 1793, 1809 (2022).  In analyzing an alleged *Bivens* claim, the Supreme Court requires a two-step analysis. First, the Court asks whether the case presents "a new *Bivens* context."  *Id.* at 1803.  Second, if a new *Bivens* context is implicated, then a *Bivens* claim is unavailable if there are "special factors" indicating "the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Id.* (citing citations omitted).  Although the analysis is two steps, the central inquiry is simply, "whether there is any reason to think that Congress might be better equipped to create a damages remedy."  *Id.*  That inquiry is important because creating a damages remedy implicates "the Constitution's separation of legislative and judicial power." *Hernandez*, 140 S. Ct. at 741; *see also Egbert*, 142 S. Ct. at 1806 n.3 (noting that recognizing a *Bivens* cause of action "is an extraordinary act that places great stress on the separation of powers").  Therefore, "'[e]ven a single sound reason to defer to Congress' is enough to require a court to refrain from creating such a remedy."  *Egbert*, 142 S. Ct. at 1803 (citations omitted). **Because the "most important question" in this situation is "who should decide whether to provide for a damages remedy, Congress or the courts," it follows that "[i]f there is a rational reason to think that the answer is 'Congress' –** *as it will be in most every case***," then "no** *Bivens* **action may lie."**  *Id.*  (emphasis added).

The Tenth Circuit in *Silva v. United States* recognized that the Supreme Court in *Egbert* essentially distilled the *Bivens* inquiry to a single question: "Whether there is any reason to think that Congress might be better equipped to create a damages remedy."  45 F.4th 1134, 1139 (10th Cir. 2022).  Notably, the Tenth Circuit in *Silva* observed that the Supreme Court's rejection of the plaintiff's Fourth Amendment claims in *Egbert*, "**despite its close resemblance to the facts of Bivens itself**, underscores the extent of the Court's disfavor toward Bivens claims." *Id.* at 1140 (emphasis added).  Indeed, according to the Tenth Circuit, the "Supreme Court's message [in *Egbert*] could not be clearer—lower courts expand *Bivens* claims at their own peril" and there is "**no doubt that expanding *Bivens* is not just 'a disfavored judicial activity,' it is impermissible in virtually all circumstances**." *Id.* at 1140 (emphasis added) (citations omitted).

### 1. *Plaintiffs' Allegations Present a "New Bivens Context"*

In the first step of the *Bivens* analysis, the Court must determine whether the case presents a "new *Bivens* context."  *Egbert*, 142 S. Ct. at 1803.  To do so, the Court must evaluate whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Abbassi,* 137 S. Ct. at 1859.  Several factors may be relevant to this inquiry, including: the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.  *Id.* at 1860.

A "new context" specifically includes *when a case involves a new category of defendants*. *Egbert*, 142 S. Ct. at 1803. (citing *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61 (2001)). Importantly, a "new context" also arises even if the claim is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.  *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (declining to extend *Bivens* to Fourth Amendment claims of excessive force used against 15-year-old Mexican national across the border by a line level Border Patrol agent); *see also Egbert*, 142 S. Ct. at 1807 (declining to extend *Bivens* to Fourth Amendment claims of excessive force against bed and breakfast owner by line level Border Patrol agent); *Silva v. United States*, 45 F.4th 1134, 1137 (10th Cir. 2022) (distinguishing Eighth Amendment claims for excessive force from Eighth Amendment claims for deliberate indifference in *Carlson v. Green*, 446 U.S. 14 (1980)).

5

In *Egbert*, the plaintiff filed a Fourth Amendment claim against a Border Patrol agent who allegedly used excessive force on the plaintiff while conducting a search on the plaintiff's property on the U.S. – Canadian border.  142 S. Ct. at 1800-01.  The Supreme Court acknowledged the allegations of excessive force presented arguably "almost parallel circumstances" or a similar "mechanism of injury" to the circumstances presented in *Bivens* (i.e., Fourth Amendment use of force), but determined such were "superficial similarities" and insufficient to support the judicial creation of a cause of action.  *Id.* at 1805.

Here, Plaintiffs' alleged Fourth Amendment claims against members of the U.S. Marshal Service executing an arrest warrant unquestionably present a "new context" for which Congress— not the courts—is best positioned to fashion a remedy.  First, the USMS Defendants here are members of the U.S. Marshals Service—a category of federal officers against which a *Bivens* claim has not previously been authorized.  *See Cienciva vs. Brozowski*, No. 3:20-cv-2045, 2022 WL 2791752, at *10-11 (M.D. Pa. July 15, 2022) ("The Supreme Court has never extended *Bivens* to claims against Marshals for use of excessive force."); *see also, e.g.*, *Lewis v. Westfield*, No. 16-CIV-1057, 2022 WL 16924177, at *6  (E.D. N.Y. Nov. 14, 2022) (finding claim presented new context because the defendants "are Deputy Marshals, rather than federal narcotics agents"); *Edwards v. Gizzi*, No. 20-CV-7371 (KMK), 2022 WL 309393, at *7 (S.D.N.Y. Feb. 2, 2022) (lawsuit against Deputy U.S. Marshals presented new context because "the officers involved in *Bivens* were federal narcotics agents" and therefore part of "an investigatory and enforcement force," rather than members of the U.S. Marshals Service); *Bivins v. Rodriguez*, No. 18-CV-2671, 2020 WL 134115, at *4 (E.D. Cal. Jan. 13, 2020) (declining to extend *Bivens* excessive force claims against Deputy U.S. Marshal arising from the shooting of a suspect who tried surrendering after a car chase); *Style v. Mackey*, No. 17-CV-1691, 2020 WL 3055319 (S.D.N.Y. Jun. 8, 2020) (finding new context in case where two deputy U.S. Marshals allegedly used excessive force during plaintiff's arrest).

Second, the "legal mandate" under which the USMS Defendants here were operating presents a "new context."  Here, the USMS Defendants were acting pursuant to a judicially-authorized arrest warrant for Jones.  Under 28 U.S.C. § 566(c), the USMS Defendants—as members of the USMS Eastern District of Oklahoma's Violent Crimes Task Force—were required to "execute all lawful writs, process and orders of the United States," including Jones's adopted state warrant, and "command all necessary assistance to execute its duties." In contrast, in *Bivens*,

the narcotics agents allegedly conducted a search and arrest *without a warrant*. Thus, the legal mandate for the officers' entry into Bivens' home, the search of the home, and the arrest of Bivens *was alleged to be entirely lacking*; whereas, here, the USMS Defendants were statutorily mandated to enforce the lawful adopted state warrant for Jones's arrest. *See Lewis*, 2022 WL 16924177, at *6-7 (E.D.N.Y. Nov. 14, 2022) (finding claims against USMS officers presented new context because "[w]hile the officers in *Bivens* were attempting to conduct a warrantless arrest, the defendants here were executing an arrest warrant, pursuant to the Marshals Service's statutory authority to 'execute all lawful writs, process, and orders issued under the authority of the United States,' 28 U.S.C. § 566(c)"); *Logsdon v. USMS* , No. 21-CIV-253, 2023 WL 205052, at *3 (E.D. Okla. Jan. 13, 2023) (finding excessive force claim against Deputy U.S. Marshals constituted a "new context" because *inter alia* "unlike the warrantless arrest in *Bivens*, the [Deputy U.S. Marshals] here had an arrest warrant for plaintiff"); *see also Mejia v. Miller*, 61 F.4th 663, 668 (9th Cir. 2022) (finding excessive force claim against Bureau of Land Management (BLM) officer presented new context, in part, because plaintiff did not identify "any reason to believe that most federal agencies have the same or similar legal mandates, or more to the point, that BLM has the same mandate as agencies enforcing federal anti-narcotics law" like the officers in *Bivens*).

In that sense, not only is the "legal mandate" different here than in *Bivens*, but so too is the "extent of the judicial guidance" governing the relevant conduct. *See Abbasi*, 137 S. Ct. at 1859-60 (listing extent of judicial guidance as to how an officer should respond as relevant difference that may make context new); *see also Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) ("'Judicial guidance' differs across various kinds of Fourth Amendment violations—like seizures by deadly force, searches by wiretap, *Terry* stops, executions of warrants, seizures without process ('false arrest'), seizures with wrongful legal process ('malicious prosecution'), etc.").

In addition to the above differences, it bears emphasizing that the instant case is also factually distinguishable from *Bivens* for other reasons. Plaintiff does not allege that he was "strip search[ed]", "manacled" in front of his family, or that Defendants searched his home from "stem to stern." *Bivens*, 403 U.S. at 389. Courts have concluded that *Bivens* claims that are factually dissimilar to *Bivens* present a new context. *See Hernandez v. Causey*, No. 2:17-123, 2022 WL 4594023, at *11 (S.D. Miss. Sept. 29, 2022) (granting motion for reconsideration and finding new context where, *inter alia*, "narcotics were not involved" and the defendant "did not manacle

7

[plaintiff] in front of his family and did not strip-search him, as was the case in *Bivens*, but rather shot him in his right forearm").

Further, as discussed below, Plaintiff's allegations implicate "potential special factors that previous *Bivens* cases did not consider," which is also enough—by itself to constitute a "new context." *Egbert*, 142 S. Ct. at 1803. *Bivens* itself "never meaningfully undertook" a "special-factors inquiry." *Id*. at 1805. However, as is addressed in more detail, *infra*, Plaintiff's claims here implicate additional special factors that *Bivens* never considered, including alternative processes to deter officer misconduct and legislative action in the context of fugitive operations.

In sum, regardless of any "parallel circumstances," there are multiple distinctions, any one of which is meaningful enough to satisfy the low bar needed to meet the "new context" inquiry. *See Abbasi*, 137 S. Ct. at 1865 ("Given this Court's expressed caution about extending the Bivens remedy . . . the new-context inquiry is easily satisfied").

### 2. *Special Factors Counsel Against Finding an Implied* **Bivens** *Cause of Action Here*

As the Supreme Court and Tenth Circuit have emphasized, the core question in *any Bivens* case boils down to "'whether there is any reason to think that Congress might be better equipped to create a damages remedy.'" *Silva*, 45 F.4th at 1139 (citing *Egbert* at 1803). The Court must determine whether there are "special factors" indicating "the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1805 (citing citations omitted). If the Court finds such factors exist, a *Bivens* claim cannot be authorized. *Id.* The central inquiry here is whether Congress—and not the Courts—is better positioned to provide a remedy. *Egbert*, 142 S. Ct. at 1803. Dispositively, the Supreme Court will not authorize a *Bivens* action "if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Id.* at 1798. The alleged adequacy of that remedial structure is immaterial. *Id.* (citation omitted).

Here, numerous special factors exist, barring Plaintiffs' alleged *Bivens* claims.

### a. *Congress is Better Positioned to Fashion a Remedy in this Context, Precluding Plaintiffs' Alleged Bivens Claims*

Congress is better positioned to create remedies in the context implicated, *Silva*, 45 F.4th at 1141 (citing *Egbert*, 142 S. Ct. at 1804), because Plaintiff's *Bivens* claims implicate "policy questions in an area" that has "received careful attention from Congress." *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988). Congress has legislated extensively in the context of USMS and fugitive

operations, yet "[a]t no point did Congress choose to extend any person the kind of remedies that [Plaintiff] seeks in this lawsuit." *Id*. at 426. In 2000, Congress passed the Presidential Threat Protection Act of 2000, 106 P.L. 544, 114 Stat. 2715, under which the USMS established the regional task forces. The Act requires the establishment of "permanent Fugitive Apprehension Task Forces consisting of Federal, State, and local law enforcement authorities in designated regions of the United States, to be directed and coordinated by the United States Marshals Service, for the purpose of locating and apprehending fugitives." 34 U.S.C. § 41503(a). Members of Congress noted that "the number of dangerous fugitives is rising" and emphasized the need for increased federal efforts to apprehend "these hard-core, repeat criminals." Senate Proceedings on Presidential Threat Protection Act of 2000, 146 Cong. Rec. S11651-01 (106th Congress, 2nd Sess. 2000) (statement of Sen. Thurmond). Another federal statute, 34 U.S.C. § 20989, requires USMS to establish a Fugitive Safe Surrender Program, under which the United States Marshals Service shall apprehend Federal, State, and local fugitives in a safe, secure, and peaceful manner to be coordinated with law enforcement and community leaders in designated cities throughout the United States." *Id.* § 20989(b).

Additionally, extending *Bivens* to the given context of warrant-based fugitive operations has the potential to yield significant "administrative costs" and impact "governmental operations systemwide." *Egbert*, 142 S. Ct. at 1803 (quotation omitted). USMS is the federal government's primary agency for fugitive operations. The purpose of fugitive task forces, like the one that the USMS Defendants here served on, "is to combine the efforts of federal, state, and local law enforcement agencies to locate and apprehend the most dangerous fugitives . . . ." U.S. Marshal Service Fugitive Task Forces, https://www.usmarshals.gov/what-we-do/fugitive-investigations/fugitive-task-forces (last visited April 21, 2023). And in 2020 alone, U.S. Marshals Service-led fugitive task forces arrested over 77,460 federal, state, and local fugitives and cleared over 90,400 warrants. *Id.* Imposing the specter of personal damages liability on officers engaged in the difficult but essential task of serving arrest warrants on dangerous fugitives could chill those officers in performing their duties. *See Egbert*, 142 S. Ct. at 1807 ("Federal employees faced with the added risk of personal liability for decisions that they believe to be a correct response to improper activity would be deterred from carrying out their duties." (quotation and alterations omitted)). Indeed, even just the "potential for such consequences" counsels hesitation. *Id.* at 1805; *see, e.g., Young v. City Council Bluffs*, 569 F. Supp. 3d 885, 895 (S.D. Iowa 2021) (finding that

9

authorizing a *Bivens* cause of action to arrests of fugitives pursuant to arrest warrants—a primary duty of USMS Fugitive Task Forces—would "undoubtedly cause a chilling effect in law enforcement's execution of validly issued warrants"). Congress is best positioned to govern the activities of the federal government's primary agency for fugitive operations.

Finally, Congress provides the USMS's budget appropriations and reviews its programs, and selected investigations. *See e.g.* https://www.congress.gov/event/116th-congress/house-event/111100?s=1&r=51 (detailing the House Committee's oversight of USMS) (last visited April 21, 2023); https://www.judiciary.senate.gov/about/subcommittees (detailing the Senate's sub-committee's oversight of the United States Marshals Service) (last visited April 21, 2023). If deputies or USMS officials act overzealously while executing official acts pursuant to their congressional authority, as alleged in this case, Congress itself can craft appropriate remedies.

Because Congress is best positioned to fashion a remedy for the alleged actions of the federal government's primary agency for fugitive operations, no *Bivens* claim may lie. Dismissal is proper.

### b. *Alternative Remedial Structures Already Exist, Precluding Plaintiffs' Alleged Bivens Claims*

No *Bivens* action may be authorized when alternative remedial structures exist. *Egbert*, 142 S. Ct. at 1798. In *Egbert*, the Supreme Court emphasized that an Executive Branch agency's grievance procedures and regulatory obligations to investigate complaints of officer misconduct preclude a *Bivens* remedy. *Id.* at 1806. There, the Supreme Court found that the "U.S. Border Patrol is statutorily obligated to 'control, direc[t], and supervis[e] . . . all employees. . . . And, by regulation, . . . must investigate '[a]lleged violations of the standards for enforcement activities' and accept grievances from '[a]ny persons wishing to lodge a complaint.'" *Id.* (quoting 8 C.F.R. §§ 1103(a)(2), 287.10(a)-(b)).

Similarly, the Tenth Circuit in *Silva* found no *Bivens* claim was available against members of the Bureau of Prisons because the BOP's Administrative Remedy Program was an adequate alternative remedy even though it is a regulatory creation of the Bureau of Prisons instead of a congressionally mandated program. 45 F.4th at 1141. Circuit and district courts around the country have followed suit appropriately, finding that the availability of administrative remedies preclude a *Bivens* remedy. *See Mejia*, 61 at F.4th 669 (Ninth Circuit precluding a *Bivens* remedy against BLM officials based on alternative remedies, referencing Office of Inspector General

investigations);*Pettibone v. Russell*, 59 F.4th 449, 456-457 (9th Cir. 2023) (Ninth Circuit precluding a *Bivens* remedy against Department of Homeland Security officials based on available alternative remedy of reporting alleged violations to Inspector General); *Choice v. Michalak*, 2022 WL 4079577, *6 (N.D. Ill. Sept. 6, 2022) (same, relying on *Silva*); *Logsdon,* 2023 WL 205052, at *3 (finding USMS alternative remedies alone sufficient to refuse to extend *Bivens* claim for excessive force used during the execution of a warrant), *Bivens v Blaike,* No. 21-cv-00783, 2022 WL 2158984, at *3 (D. Colo. June 15, 2022) (recognizing broad implications of *Egbert* and concluding that an administrative grievance process *alone* precludes a *Bivens* remedy).

Here, there exist several administrative mechanisms to secure an adequate level of deterrence against misconduct by USMS officers like those Plaintiff seeks to hold personally liable through a novel *Bivens* remedy.  First, the U.S. Marshal Service has administrative procedures sufficiently similar to those in *Egbert* which should preclude *Bivens* in the instant situation. Pursuant to 28 C.F.R. § 0.111 (m)-(n), the Director of the United States Marshals Service "shall direct and supervise all activities of the U.S. Marshals Service…[including the] investigation of alleged improper conduct on the part of U.S. Marshals Service personnel" and is also empowered to "approv[e] staffing of the offices of the U.S. Marshals" to include a staff member's removal from office.   Under the Director's delegated authority, USMS's Office of Professional Responsibility, Internal Affairs (OPR) investigates employee misconduct and addresses complaints regarding USMS personnel or programs for appropriate administrative action. *See* https://www.usmarshals.gov/oi/ (last accessed April 20, 2023). Any member of the public who is allegedly subjected to misconduct by USMS personnel may seek redress directly through the agency's comprehensive administrative system administered by OPR. *See* https://www.usmarshals.gov/oi/ (last accessed April 20, 2023)**.**

Moreover, Congress has authorized Inspectors General across the Executive Branch to investigate and report abuses by federal law enforcement officers, including USMS employees and officials. *See* 5 U.S.C. app. 3 § 3. Those aggrieved by USMS employees and officials may submit complaints to the Department of Justice's Office of Inspector General (OIG). *See* https://oig.justice.gov/hotline/submit_complaint; https://oig.justice.gov/hotline (telephonic hotline). The Justice Department's Inspector General may "investigate allegations of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice or may, in the discretion of Inspector General, refer such allegations to the Office of Professional

Responsibility or the internal affairs office" of USMS. Report to Congress on Implementation of Section 1001 of the USA PATRIOT Act (as required by Section 1001(3) of Public Law 107-56) No. 22-102 (Sept. 2022) (https://oig.justice.gov/sites/default/files/reports/22-102.pdf) ("Section 1001 of the USA PATRIOT Act (Patriot Act), Public Law 107-56, directs the Office of the Inspector General (OIG) of the U.S. Department of Justice (DOJ or Department) to undertake a series of actions related to claims of civil rights or civil liberties violations allegedly committed by DOJ employees.").  Allegations related solely to state and local law enforcement or government officials that raise a federal civil rights concern are forwarded to the DOJ Civil Rights Division. *Id*. at 5. That and the prospect of criminal prosecution are additional deterrents of official abuse and obviate the need for a judicially-implied *Bivens* remedy. Further, Congress included additional oversight of this process, requiring OIG to provide semiannual reports to Congress on the implementation of OIG's responsibilities under Section 1001 of the Patriot Act.

In the end, "[s]o long as Congress or the Executive has created a remedial process that it [i.e., Congress or the Executive] finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1807.  Such safeguards plainly exist here. *See Logsdon,* 2023 WL 205052, at *4 (foreclosing Bivens "claim that a Deputy U.S. Marshal engaged in wrongful conduct" based on several alternative remedies including an administrative grievance*); Lewis*, 2022 WL 16924177, at *4 (finding administrative grievance and discipline procedures applicable to USMS officers constituted alternative remedial scheme sufficient to foreclose *Bivens* extension to excessive force and failure-to-intervene claim against Deputy U.S. Marshals); *Cienciva,* 2022 WL 2791752, at *10 (same as to claims of excessive force against USMS officials); *Pettibone v. Biden*, No. 3:20-CV-1464-YY, 2022 WL 19521759, *11 (D. Or. Sept. 22, 2022) report and recommendation adopted, No. 3:20-CV-1464-YY, 2023 WL 2969267, *1 (D. Or. Apr. 17, 2023) (holding alternative administrative remedy precludes *Bivens* action against USMS deputies).

Similarly, additional statutory alternative avenues of remedy also limit the power of the judiciary to create a new *Bivens* remedy.  The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80, which provides for damages for tortious conduct of U.S. employees, is a sufficient remedy to preclude recognizing a *Bivens* action. *See, e.g., Logsdon,* 2023 WL 205052, at *4 (foreclosing Bivens "claim that a Deputy U.S. Marshal engaged in wrongful conduct" based on several alternative remedies including FTCA); *Rivera v. Samilo*, 370 F. Supp.3d 362, 369-70

(E.D.N.Y. 2019) (the FTCA precludes a new *Bivens* remedy). Even pre-*Egbert*, federal appellate courts, including the Tenth Circuit, have recognized the FTCA as an alternative scheme that, along with other special factors, counsels hesitation before extending Bivens. *See Williams v. Keller*, 2021 WL 4486392, at *4 (10th Cir. Oct 1, 2021) (Order and Judgment) (finding FTCA's "statutory framework for remedying torts committed by federal officers" was among special factors counseling against *Bivens* remedy, notwithstanding the fact that plaintiff's FTCA claims were dismissed for lack of subject matter jurisdiction); *see also Oliva v. Nivar*, 973 F.3d 438, 443-44 (5th Cir. 2020) (finding FTCA an "alternative remedial scheme" counseling against extending Bivens to excessive force claims, even though "the FTCA might not give [the plaintiff everything he seeks"); *Schwarz v. Meinberg*, 761 Fed. Appx. 732, 734-35 (9th Cir. Feb. 13, 2019) (unpublished) (finding plaintiff had "alternative processes by which to pursue his claims and remedies" including through the FTCA").

Likewise, 31 U.S.C. § 3724, which allows the Department of Justice to settle for no more than $50K a claim for personal injury, death, or damage to, or loss of privately owned property, caused by an investigative or law enforcement officer (as defined in 28 U.S.C. § 2680(h)) who is employed by the Department of Justice acting within the scope of employment that may not be settled under the FTCA, is another alternative remedy counseling against extending *Bivens*. *See Logsdon*, at *4 (foreclosing *Bivens* against a Deputy U.S. Marshal based on several alternative remedies, including 31 U.S.C. § 3724); *Davis v. Dotson*, 2021 WL 5353099, at *2 (11th Cir. Nov. 17, 2021) (finding 31 U.S.C. § 3724 as an alternative scheme counseling against *Bivens* remedy).

The undisputed existence of alternative remedial structures is fatal to, and dispositive of, Plaintiffs' alleged *Bivens* claims. Dismissal is proper.

**B.      Plaintiffs' Alleged *Bivens* Actions Against the USMS Defendants are Time Barred**

Assuming *arguendo* Plaintiffs have asserted viable *Bivens* claims against the USMS Defendants, such purported claims are barred by the statute of limitations and cannot be saved by the relation-back doctrine.  Dismissal is proper.

*1.      Plaintiffs' Bivens Claims Against the USMS Defendants Were Asserted More than Two Years After the Alleged Fourth Amendment Violations*

A *Bivens* action arises substantively under Constitution pursuant to 28 U.S.C. § 1331, which does not provide for a statute of limitations.  Instead, the statute of limitations is governed by the state statute of limitations applicable to personal injury actions.  *Wilson v. Garcia*, 471 U.S.

13

261 (1985); *Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009).  In Oklahoma, the statute of limitations for personal injury actions is two years.   12 Okla. Stat. tit. 12, § 95(A)(3). Consequently, Plaintiffs' *Bivens* actions against the USMS Defendants are subject to a two-year statute of limitation.  *See McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011).

If Plaintiffs had a viable cause of action, it accrued on November 6, 2019 at the time Jones's death and Plaintiff Cardinal's alleged unlawful detention during the execution of the arrest warrant. Plaintiffs had until November 6, 2021 to assert a claim against the USMS Defendants, but failed to do so until October 31, 2022.  Plaintiffs' alleged Fourth Amendment claims against the USMS Defendants are facially untimely and should be dismissed.

2. <u>**The Second Amended Complaint Does Not Relate Back to the Date of the Original Complaint to Save Plaintiffs' Untimely Alleged Bivens Claims Against the USMS Defendants**</u>

Rule 15(c) of the Federal Rules of Civil Procedure permits an amended pleading to relate back to the date of the original pleading only when:

> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to the be set forth in the original pleading, or

> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint , the party to be brought  in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known, ***but for a mistake concerning the identity of the proper party***, the action would have been brought against the party.

Fed. R. Civ. P. 15(c) (emphasis added).  A "mistake" in identifying the property party is a necessary prerequisite to permitting an amended pleaded to relate back.  *See id.*; *see also Krupski v. Costa Crociere S. p. A.,* 560 U.S. 538, 545 (2010) (setting forth the three elements for relation back to apply and requiring "that the action would have been brought against [the newly named defendant" *but for a mistake concerning the proper party's identity*" (emphasis added)).  The "but for a mistake" language of FRCP 15(c)(1)(C)(ii) is meant to allow "correcting a misnomer or misdescription of defendant and not to add or subtract a new party defendant." *Graves v. Gen. Ins. Corp.,* 412 F.2d 583, 585 (10th Cir. 1969).  A plaintiff's lack of knowledge of the intended defendant's identity fails to satisfy the "mistake" element of Rule 15(c).  *Garrett v. Fleming*, 362

14

F.3d 692, 696-97 (10th Cir. 2004); *see also Bell v. City of Topeka*, 279 Fed. Appx. 689, 692 (10th Cir. 2008); *Wayne v. Jarvis*, 197 F.3d 1098, 1103–04 (11th Cir. 1999); *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998); *Jacobsen v. Osborne*, 133 F.3d 315, 321 (5th Cir. 1998); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996);  *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995), modified, 74 F.3d 1366 (2d Cir. 1996); *W. Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1201 (4th Cir. 1989).  Consequently, pleadings substituting, or otherwise naming, defendants in lieu of "John Doe" designations do not relate back to the original pleading.

The Tenth Circuit has analyzed nearly identical procedural circumstances to the present case. In *Garrett v. Fleming*, the plaintiff asserted a civil rights claim alleging excessive force and denial of medical care against the Director of the Federal Bureau of Prisons and thirty "John Does" which represented unknown correctional officers.  362 F.3d at 694.  After the two-year statute of limitations passed, the plaintiff amended his Complaint to substitute six correctional officers as defendants in lieu of the "John Doe" defendants.  *Id.*  The newly-named defendants moved to dismiss the Amended Complaint or moved for summary judgment, arguing the statute of limitations had expired on the claims.  *Id.* at 694-95.  The plaintiff argued the Amended Complaint related back to the original Complaint that was timely filed.  *Id.*  The District Court granted the motions, adopting the Magistrate's recommendation finding the plaintiff's Amended Complaint did not relate back to the original Complaint under Rule 15(c)(3) because, as a matter of law the plaintiff's "lack of knowledge of defendants' names at the time of the original complaint could not satisfy the 'mistake' requirement of Rule 15(c)(3)(B)."  *Id.* at 695.  Consequently, the plaintiff's claims were untimely.  *Id.* at 694-95.  The plaintiff appealed.  *Id.* at 695.

In affirming the District Court, the Tenth Circuit agreed with the District Court's analysis, determining such was in accord with seven of the eight circuits that had considered the issue at the time.  *Id.* at 696.  The Tenth Circuit ruled, "[a] plaintiff's designation of an unknown defendant as 'John Doe' in the original complaint is not a formal defect of the type Rule 15(c)(3) was meant to address."  *Id.* at 697.  Instead, Rule 15(c)(3) was intended to resolve the problem with misnamed and misidentified defendants.  *Id.*

This case is procedurally identical to *Garrett* and should similarly be dismissed. Plaintiffs' original Complaint did not specifically name any of the USMS Defendants as parties, nor did Plaintiffs attempt to do so; instead, Plaintiffs failed to timely identify the USMS Defendants'

names and affirmatively chose to sue "Six Unknown U.S. Marshals Service Agents" as a placeholder while they undertook discovery. Like in *Garrett*, Plaintiffs' use of generic placeholder defendant while attempting to identify the unknown defendants cannot save Plaintiffs' claims.

Plaintiffs' Fourth Amendment claims against the USMS Defendants in the Second Amended Complaint do not relate back to the original Complaint; therefore, dismissal of Plaintiff's Fourth Amendment claims against the USMS Defendants is proper.

**C**.    **The USMS Defendants are entitled to Qualified Immunity.**

In the instant case, Plaintiffs' allegations in Count One fall short of the knowing violation of a clearly established statutory or constitutional right. Governmental officials generally are shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, in determining whether an official is immune from individual damages suit, the court must consider whether the activities alleged to have occurred violated clearly established law at the time the challenged actions were taken. The Supreme Court has required courts to define the right at issue at a particularized level of generality. *Anderson v. Creighton*, 483 U.S. 635, 639-640 (1987). If the law was clearly established, then the court must consider whether, in the specific circumstances of the challenged action, a reasonable law enforcement officer could have believed his actions lawful in light of the specific facts he possessed. *Id.* However, the Supreme Court has explained that it is within the court's discretion to determine which prong of the test to assess first given the circumstances of the case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Plaintiffs' claims against the USMS Defendants fail under both prongs of the qualified immunity analysis.

As the Supreme Court instructs, the qualified immunity analysis begins by defining the claimed right with relevant specificity. *See, e.g., Brosseau v. Haugen*, 543 U.S. 194 (2004). Count One alleges allege a Fourth Amendment violation of Jones' rights based on excessive use of force. However, Plaintiffs' allegations that the USMS Defendants "restrained Mr. Jones' liberty by using such physical and excessive force" (*id.*, ¶¶ 60, 68, 76, 84, 92, & 100), and "used unreasonable and excessive force when serving an arrest warrant" (*id.*, ¶¶ 58, 66, 74, 82, 90, & 98) constitute nothing more than conclusory bare bones allegations with labels. In the context of excessive force, the Tenth Circuit has previously recognized the law enforcement officer's "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or

threat thereof to effect it." *Lundstrom v. Romero*, 616 F.3d at 1126 (10th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989). Numerous courts recognize, where a suspect resists arrest or fails to follow police orders, officers do not violate his right against excessive force by various forms of physical force *See e.g., White v. Jackson*, 865 F.3d 1064, 1080 (8th Cir. 2017) (pushing an arrestee to the ground and placing a knee on the arrestee's back in order to effectuate an arrest "was not an unreasonable use of force"); *Jackson v. City of Bremerton*, 268 F.3d 646, 650, 652-53 (9th Cir. 2001) (no excessive force when, during the plaintiff's arrest, the officer pushed her down to the ground, placed a knee on her back, and handcuffed her); *Mongeau v. Jacksonville Sheriff's Office*, 197 F. App'x 847, 851 (11th Cir. 2006) (placing a knee on an arrestee's back to subdue him, after the arrestee had fled and had refused to exit his vehicle, was objectively reasonable); *Nolin v. Isbell*, 207 F.3d 1253, 1257-58 (11th Cir. 2000) (finding the shoving of an arrestee against a van, the pressing of a knee against his back and the pushing of his head into the side of a van during the course of his arrest constituted de minimis force); *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021) (briefly placing knee on arrestee's back who possessed knife in pocket). "[T]he use of deadly force is not unlawful if a reasonable officer would have had probable cause to believe that there was a threat of serious physical harm to himself or others." *Thomas v. Durastanti*, 607 F.3d 655, 664 (10th Cir. 2010) (citing *Graham*, 490 U.S. at 397). Thus, the mere use of force—even if deadly—during the execution of an arrest warrant is not per se unconstitutional.

The additional allegations that USMS Defendants Neill, Berry, Baker, and Gilliam "entered the house, fired [their] weapon, and Mr. Jones died" (*id.*, ¶¶ 56, 64, 72, 80) and that Defendants Alexander and Smith "failed to intervene" (*id.*, ¶¶ 88, 96) are similarly defective for the same reason. According to Plaintiff Cardinal, the USMS Defendants "had identified themselves" to Cardinal on the front porch, with the front door open, and were wearing "U.S. Marshals labels" (Doc. 95, ¶¶ 26, 31, 33) and, upon entry, there were three volleys of gunfire (Doc. 95, ¶¶ 30-31). Although Plaintiffs allege that Jones had no history of violence and "was not trying to flee or even aware of the warrant" (Doc. 95, ¶¶ 61, 69, 77, 85), they fail to describe Jones' actions on the scene immediately prior to the USMS Defendants' alleged use of force. Plaintiffs are noticeably silent on whether Jones posed a threat to the USMS Defendants and, thus, do not shed light on whether Jones was compliant prior to or subdued such that the threat had clearly dissipated or the "threat had passed" from the officer's view. *See Estate of Smart by Smart v. City*

*of Wichita*, 951 F.3d 1161, 1176 (10th Cir. 2020) (recognizing that it must be clear to a reasonable officer that the perceived threat has passed). Whether an individual has been subdued from the perspective of a reasonable officer depends on the officer having "enough time [ ] to recognize [that the individual no longer poses a threat] and react to the changed circumstances." *See Fancher v. Barrientos*, 723 F.3d 1191, 1201 (10th Cir. 2013) (quotations omitted); see also *Graham*, 490 U.S. at 396 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). Accordingly, Plaintiffs have failed to supply sufficient "factual content that allows the court to draw the reasonable inference that" each USMS Defendant, judged from the perspective of a reasonable officer on the scene, "is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Furthermore, Plaintiffs' allegations that the USMS Defendants "did not wear a body camera" (Doc. 95, ¶¶ 57, 65, 73, 81, 89, 97) and that Plaintiff Cardinal was not allowed to "notify [] Jones that the officers were there for him" (Doc. 95, ¶¶ 61, 69, 77, 85, 93, 100) also are no assistance in avoiding qualified immunity.[1] Plaintiffs can point to no such constitutional right to a body worn camera or notification.

Moreover, underlying all qualified immunity cases is the question "whether the plaintiff has asserted a violation of a . . . right at all." *Siegert v. Gilley*, 500 U.S. 226, 231-32 (1991). In this case, that answer is no. Plaintiffs fail to plausibly demonstrate the USMS Defendants' personal involvement in the acts alleged constituted a constitutional violation based on the undisputed circumstances, and therefore, the claims against them are subject to dismissal under Rule 12(b)(6).

Generally, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. To satisfy the plausibility standard ". . . a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. at 676 (emphasis added). *See also F.D.I.C. v. Meyer*, 510 U.S. 471, 484-86 (1994) (*Bivens* claim requires the plaintiff to plead that a government official, through the official's own individual actions, has violated the Constitution and is liable in his individual capacity).

Plaintiffs' failure to make individual allegations against each individual Defendant is

---

[1] *Bivens* actions "have never [been] considered a proper vehicle for altering an entity's policy." Corr. Servs. Corp. v. *Malesko*, 534 U.S. 61, 74 (2001); *Abassi*, 137 S. Ct. at 1860 (same).

similarly fatal.  The plaintiff must show that the official directly and personally participated in the constitutional violation. *Pahls v. Thomas, 718* F.3d 1210, 1226 (10th Cir. 2013). As explained by the Tenth Circuit, for a *Bivens* action "it is particularly important" that plaintiffs "make clear exactly who is alleged to have done what to whom, ... as distinguished from collective allegations." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (citation omitted).

Although Plaintiffs' allegations in Count One are written individually, they contain nearly identical allegations against USMS Defendants Neill, Baker, Berry, and Gilliam (Doc. 95, ¶¶ 55-86) and nearly identical allegations against USMS Defendants Smith and Alexander (*id*., ¶¶ 87-101) merely substituting their names.   Further, with regard to USMS Defendants Alexander and Smith, although Plaintiffs have alleged that Alexander and Smith "used excessive force" (Doc. 95, ¶¶ 90, 98) and "failed to intervene" (*id.*, ¶¶ 88, 96), these are conclusory statements.  Plaintiffs have not provided a single fact relating to their use of force and have not alleged that they entered the home prior to the shooting to plausibly establish any alleged constitutional violation.

Given Plaintiffs' failure to elucidate Jones' actions during the execution of the arrest warrant, Plaintiff will be unable to point to a single case of precedential value that makes clear to the reasonable officer that USMS Defendants' actions constituted a violation of the Fourth Amendment and, thus, they should be entitled to qualified immunity. Accordingly, Plaintiffs have failed to state a claim for relief under *Bivens* and their *Bivens* claims should be dismissed with prejudice under Rule 12(b)(6).

## D.   <u>The USMS Defendants Are Immune from Liability Under State Tort Law</u>

Plaintiffs bring their wrongful death claim in Count Two under the Oklahoma wrongful death statute against the USMS Defendants. However, under the "Westfall Act," the Federal Tort Claims Act is the exclusive remedy for federal employees' state law torts. *See* 28 U.S.C. § 2679(b)(1). The Federal Tort Claims Act (FTCA) governs actions against the United States arising from the alleged acts/omissions of employees of the United States acting within the course and scope of their employment.  *See* 28 U.S.C. §§ 2674, 2675.  "[A]n FTCA claim can only be brought against the United States." *Smith v. United States*, 561 F.3d 1090, 1093 (10th Cir. 2009); *see also* 28 U.S.C. §§ 2671, 2679(a), (b)(1) (providing the FTCA does not authorize suits against federal agencies, and the FTCA remedy is exclusive with respect to injuries caused by federal employees acting within the scope of their employment); *Sheridan v. Reidell*, 465 F.Supp.2d 528, 531 (D.S.C. 2006); *see also Jackson v. Kotter*, 541 F.3d 688, 693 (7th Cir. 2008) ("The only proper defendant

in an FTCA action is the United States."); *Galvin v. Occupational Safety & Health Admin*., 860 F.2d 181, 183 (5th Cir.1988) ("Thus, an FTCA claim against a federal agency or employee as opposed to the United States itself must be dismissed for want of jurisdiction."). Plaintiffs have pled the USMS Defendants were acting within the scope of their employment with the Eastern District Violent Crimes Fugitive Task Force. (Doc. 95, ¶16). Although Plaintiffs allege exhaustion under the FTCA (Doc. 95 ¶ 9), they do not bring their wrongful death claim under the FTCA or name the United States as a defendant.[2] Consequently, Plaintiffs' claims should be dismissed under Rule 12(b)(1) for lack of jurisdiction.

Plaintiffs' alleged claims for wrongful death arise from the USMS Defendants' alleged conduct committed in the course and scope of their employment with the U.S. Marshals Eastern District Violent Crimes Fugitive Task Force. *See* Ex. 1 (Wilson Certification). Such claims are governed by the FTCA and cannot be asserted against the USMS Defendants individually. Such claims against the USMS Defendants are jurisdictionally barred and should be dismissed.

### III.   CONCLUSION

Dismissal is proper. This Court must find Plaintiffs' alleged *Bivens* action against the USMS Defendants is improper and unauthorized. To find otherwise would ignore controlling Supreme Court precedent and unconstitutionally encroach upon Congress's authority. No authority has permitted a *Bivens* claim against members of the U.S. Marshals Service or under the circumstances presented in this case. This case unequivocally presents a "new *Bivens* context" for which Congress is best positioned to fashion a remedy, precluding judicial intervention. Indeed, alternative remedial structures exist for Plaintiffs to take advantage of, which is fatal to Plaintiffs' alleged *Bivens* claims under Supreme Court precedent. Furthermore, even assuming a *Bivens* remedy is available to Plaintiffs, the USMS Defendants are entitled to qualified immunity.

Moreover, even assuming Plaintiffs' alleged *Bivens* action are viable, such are barred by the statute of limitations. Plaintiffs named the USMS Defendants more than two years after the alleged incident. Plaintiffs use of John Doe defendants as a placeholder in the original, timely-filed Complaint, while Plaintiffs attempted to determine the USMS Defendants' identities, cannot save Plaintiffs' untimely claims and has explicitly been rejected by Tenth Circuit precedent.

Finally, Plaintiffs' wrongful death claims against the USMS Defendants are improper.

---

[2] The USMS Defendants make no statements about whether Plaintiffs have appropriately exhausted FTCA claims against the United States, which is not appearing via this motion.

Plaintiffs' claims are governed by the Federal Tort Claims Act, which precludes naming employees as defendants in actions arising from alleged conduct in the course and scope of employment.

WHEREFORE, premises considered, Defendants Richard Berry, Brian Gilliam, Jere Smith, Keaton Alexander, Nathan Neill, and Brad Baker request the Court dismiss all causes of action against them in Plaintiffs' Second Amended Complaint, and award Defendants their costs, attorneys' fees, and any other relief the Court deems just and equitable.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

*s/Susan Stidham Brandon*
SUSAN STIDHAM BRANDON, OBA #12501
JASON POE, Louisiana Bar #31918
Assistant United States Attorneys
520 Denison Avenue
Muskogee OK 74401
Phone: 918-684-5112
Fax: 918-684-5590
Email: susan.brandon@usdoj.gov
Email: jason.poe@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF System. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Howard Berkson, Howard@bostonavenuelaw.Com
Donald Jon Slaughter, Donald@bostonavenuelaw.com
Lacey Shirley, Lacey@bostonavenuelaw.com

*s/Susan Stidham Brandon*
Assistant United States Attorney

21